IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **PHILEX, INC. and TIM OBELGONER,**<br><br>　　Plaintiffs,<br><br>v.<br><br>**SHERIFF DAVID DAVIS, in his individual capacity,**<br><br>　　Defendant. | Case No. 5:22-cv-00420-TES |

**SHERIFF DAVID DAVIS'S REPLY TO
PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Sheriff David Davis, in his individual capacity (hereinafter, "Sheriff Davis"), by and through his undersigned counsel of record, and hereby files this *Reply to Plaintiffs' Response to Motion for Summary Judgment*, respectfully showing this Court the following:

**I.   Sheriff Davis appropriately utilized his authority and discretion in suspending the Thirsty Turtle[1] alcohol license.**

Plaintiffs' central argument in opposition of Sheriff Davis's Motion for Summary Judgment is that Sheriff Davis "ignored the regulatory framework of Sections 4-402(c), (d), and (e)" and that his suspension of Thirty Turtle's alcohol license was factually unsupported.[2] Plaintiffs have consistently maintained that a linear application of these subsections is required, and thus, Sheriff Davis's failure to adhere to this linear approach resulted in a procedural due process violation.[3] In reply, Sheriff Davis shows that Plaintiffs' interpretation of the interplay of these

---

[1] Sheriff Davis incorporates all shorthand references cited in his *Brief in Support of Motion for Summary Judgment*. [Doc. 29-1].

[2] [Doc. 39 at 2, 15, 19].

[3] *Id.*; [Doc. 29-5 at 2] ("A plain reading of the Ordinance limits the Sheriff's ability to impose a temporary revocation under Section 4-402(e) to the circumstance in which the Sheriff has *completed* a review under Section 4-402(c). . . .

1

subsections is fundamentally flawed and ignores the longstanding principles of statutory construction. Further, to the extent that there is an interpretative disagreement between lawyers about the meaning of Section 4-402, that in itself demonstrates why Sheriff Davis is entitled to qualified immunity.

Under Section 4-402(c), it is undisputed that the Ordinance requires Sheriff Davis to supervise the activities of all persons granted an alcohol license in Macon-Bibb County to ensure compliance with the Ordinance and state law.[4] In doing so, Sheriff Davis is authorized "*to undertake a review of any license issued . . . for the purpose of considering whether to take any Adverse Action against such business.*"[5] By its express terms, Section 4-402(c) lists a number of factors relevant to any license review. Section 4-402(c) clearly gives the Sheriff broad discretion in "considering" whether to take any action against a licensed business.

A license review does not contemplate that Sheriff Davis perform an exhaustive investigation in all circumstances related to the factors listed in Section 4-402(c). For example, a license review could consist of simply appearing at a licensee's business to ensure that the business is checking customers' identifications before selling alcohol or that its alcohol license is prominently displayed.[6] The license review contemplated by Section 4-402(c) could be as quick as a few minutes or as long as a few years depending on the unique factual circumstances faced by Sheriff Davis. Plaintiffs' flawed interpretation of Section 4-402 would *mandate* that Sheriff Davis complete a written report of his findings pursuant to Section 4-402(d) at the conclusion of *any license review*, no matter how minor. This interpretation is as flawed as it is impractical, as Sheriff

---

Assuming the validity of Section 4-402(e), the Sheriff is without authority to unilaterally impose a temporary revocation until a review under Section 4-402(c) has been completed and a report prepared as required by Section 4-402(d).").
[4] Macon-Bibb County Code of Ordinances, Section 4-402(c); [Doc. 29-3].
[5] *Id*. (emphasis added).
[6] *Id*. at (c)(1), (3).

Davis would be writing Section 4-402(d) reports for every single license review for every alcohol license holder in Macon-Bibb County, regardless of the severity of the circumstances. For this reason, a Section 4-402(d) written report is *discretionary—not mandatory*, using the discretionary word "should" instead of the non-discretionary words "must" or "shall."[7] Therefore, a license review under Section 4-402(c) is a fluid process that permits Sheriff Davis to utilize his discretion and authority by submitting his conclusions both formally (written) and informally (verbal), or in the case of no "Adverse Action," not at all.

Section 4-402(e) is distinct from Section 4-402(c) and (d) in that it only applies to exigent circumstances necessitating immediate action and uses the factors outlined in subsection (c) as a guide for Sheriff Davis to determine whether a temporary suspension of an alcohol license is warranted based on the unique factual circumstances. Subsection (e) grants Sheriff Davis the discretionary authority to temporarily suspend an alcohol license when he makes a "determination that the factors considered under [Section 4-402(c)] create a particular and severe risk of injury or death to any person or to any member of the public at large[;]" and such a suspension shall not exceed ninety (90) days.[8] Plaintiffs' interpretation of subsections (c), (d), and (e) would defeat the very purpose of subsection (e) and be inconsistent with its plain language. Plaintiffs' interpretation would first require Sheriff Davis to complete his entire criminal investigation/license review under subsection (c), a process that could last years. Then, Sheriff Davis would have to prepare a Section 4-402(d) written report regarding the same. Only then would Sheriff Davis be able to invoke subsection (e) for the emergency threat to public safety. This interpretation wholly eviscerates the purpose and intent of subsection (e), as the exigency would always elapse before any

---

[7] *Id*. at Section 4-402(d); [Doc. 29-3 at 2] ("Upon completing a review under subsection (c) of this Section, the Sheriff *should* prepare a written report . . .").
[8] *Id*. at Section 4-402(e); [Doc. 29-3].

investigation/license review and report is written. Such application violates both the principle of *in pari materia* and the rules of statutory construction.[9] Instead, Sheriff Davis applied the appropriate statutory procedures and utilized his discretion in determining whether a Section 4-402(e) temporary suspension was warranted by considering the Section 4-402(c) factors and applying the evidence and facts readily available to him on the morning and afternoon of November 27, 2020.[10]

Contrary to Plaintiffs' assertions, Sheriff Davis's decision to temporarily suspend the Thirsty Turtle alcohol license was not made in a vacuum devoid of factual support. He considered the several factors outlined in Section 4-402(c), which include, but are not limited to, the following:

(1) The occurrence of any events during the preceding calendar year, at or within 100 yards of the licensed business, that would cause Sheriff Davis to materially alter his recommendation as to the suitability of such business for the licenses it possesses or need for conditions to be imposed on such licensee;[11]

(2) Whether any such events constitute a crime under the laws of the United States, the State of Georgia, or the Ordinance;[12]

(3) The fact or severity of any personal injuries or loss of life sustained in any such event, as well as the number of people injured or killed;[13]

---

[9] *Clayton County v. New Image Towing and Recovery, Inc.*, 351 Ga. App. 340, 345 (2019) ("In construing ordinances, as in the case of statutes, those in pari materia should be construed together, in order to arrive at the meaning of one."); *Vaughn v. Winfield Homeowners Assoc., Inc.*, 913 S.E.2d 74, 77 (2025) ("A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto."); *Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49, 52 (2017) (statutory interpretation seeks to "avoid a construction that makes some language mere surplusage").
[10] [Doc. 29-6].
[11] Section 4-402(c)(6).; [Doc. 29-3].
[12] *Id.* at Section 4-402(c)(6)(a); [Doc. 29-3].
[13] *Id.* at Section 4-402(c)(6)(b); [Doc. 29-3].

(4) Whether any such events involved the use or included the use or brandishing of any firearm or other weapon;[14]

(5) Whether any such events included gang activity;[15]

(6) The degree of knowledge, complicity, or involvement, and the actions of the licensee; or of the business'[] owners, agents, employees, or customers, with respect to such events;[16] and,

(7) Any other factor which Sheriff Davis is charged with reviewing under the Ordinance.[17]

The following facts[18] were considered for each of the above factors:

(1) <u>Factor 1 – At or within 100 yards of the licensed business</u>

It is undisputed that "[i]n the early morning hours of November 27, 2020, a fight erupted on Cherry Street near the Thirsty Turtle, and it continued onto Third Street."[19] A Thirsty Turtle security guard reported that an altercation took place inside of the club which lead to customers being pushed out onto the front sidewalk area.[20] There was also reports of a potential conflict between some females inside of the club.[21] Submitted video evidence confirmed that the altercation began in front of the Thirsty Turtle, which meets the criteria of an event occurring within 100 yards of the licensed business.[22] Further, it is undisputed that gunshots were fired directly in front of the Thirsty Turtle, a patron was shot in front of the bar, and a bullet hole was discovered in a vehicle parked directly in front of Thirsty Turtle.[23]

---

[14] *Id*. at Section 4-402(c)(6)(c)(1); [Doc. 29-3].
[15] *Id*. at Section 4-402(c)(6)(c)(3); [Doc. 29-3].
[16] *Id*. at Section 4-402(c)(6)(d); [Doc. 29-3].
[17] *Id*. at Section 4-402(c)(6)(e); [Doc. 29-3].
[18] This is not intended to be an exhaustive list of all information relied upon by Sheriff Davis in making his decision to temporarily suspend the Thirsty Turtle alcohol license. [*See* Doc. 31-8].
[19] [Doc. 39 at 1]; [Doc. 31-8 at 96]; Ex. G3; [Doc. 31-5]; Davis Dep. at 40:13-41:10, 41:15-42:9.
[20] [Doc. 39 at 24]; [Doc. 31-5]; Davis Dep. at 41:15-42:9.
[21] [Doc. 31-5]; Davis Dep. at 43:7-10, 40:20-23.
[22] Ex. G3.
[23] [Doc. 31-8 at 32, 38].

(2) Factor 2 – Whether the event in question constituted a crime

It is undisputed that a homicide investigation began immediately, as there was one (1) fatality, four (4) victims with gunshot wounds, and three (3) victims with stab wounds, the majority of whom attended the Thirsty Turtle before the fighting ensued.[24] The area around Thirsty Turtle, Cherry Street, and Third Street was secured as the crime scene.[25]

(3) Factor 3 – Severity of injuries and loss of life

It is undisputed that as a result of the violence that erupted, there was a total of eight (8) victims with various severity levels of injury, including one (1) fatality.[26] Sheriff Davis further testified that he was fearful that there would be more violence and possible reprisals at Thirsty Turtle in response to the shooting.[27] Indeed, Sheriff Davis stated that he was "worried that someone may come back the next night or over the weekend and try to seek retribution or create problems in the downtown area or *problems at this particular establishment* based on what had happened on the 27th."[28]

(4) Factor 4 – Use or brandishing of a firearm or weapon

It is undisputed that a firearm was used during the shooting on November 27, 2020.[29] It is also undisputed that some type of weapon with a blade was used during the melee near or around the Thirsty Turtle.[30]

---

[24] [Doc. 31-8 at 37-38, 94]; [Doc. 31-5]; Davis Dep. at 15:22-16:10.
[25] [Doc. 31-8 at 37-38, 94].
[26] *Id.*; [Doc. 31-5]; Davis Dep. at 15:22-17:1.
[27] [Doc. 31-5]; Davis Dep. at 39:6-25, 40:1-12.
[28] [Doc. 31-5]; *See* Davis Dep. at 39:21-25 (emphasis added), 44:9-12 ("I have this tool to use to sort of hit the reset button to say, this - - to forestall any type of further harm to anybody or even harm to the establishment itself . . .").
[29] [Doc. 31-8 at 94].
[30] [Doc. 31-8 at 26, 28]. Later investigation revealed that there were multiple firearms used in the shooting and likely more than one weapon with a blade. [Doc. 31-8 at 94-97].

(5) Factor 5 – Whether event involved gang activity

Based on the initial evidence and information received from the homicide investigation, Sheriff Davis was concerned that reprisals would occur at Thirsty Turtle, especially since Macon-Bibb County suffered from over 50 homicides in 2020, many of which involved gang violence.[31] Although Sheriff Davis could not determine gang involvement within the initial twelve (12) to fourteen (14) hours of the investigation, he could not rule it out either.[32] Instead, he proceeded in an abundance of caution and in the spirit of public safety.

(6) Factor 6 – Knowledge, complicity, and involvement of licensee or agents

Plaintiffs assert that no one from the Thirsty Turtle was involved in the violence of November 27, 2020.[33] However, the record is undisputed that at the time of the suspension, Sheriff Davis received several reports that security personnel *hired by Thirsty Turtle* were involved in the melee that ensued.[34] Several patrons of Thirsty Turtle reported that the security guards "jumped" them with knives and razor blades, pepper sprayed the crowd, and followed patrons up Cherry Street towards Third Street.[35] This clearly indicates knowledge and involvement on the part of the agents of Thirsty Turtle.[36] Thus, in the early stages of the criminal investigation, Sheriff Davis had legitimate concerns of Thirsty Turtle's involvement through the reported conduct of their security staff and the resulting injuries (and one death) to its patrons.

Once Sheriff Davis was satisfied with the factors outlined in subsection (c) being met and the factual evidence supported the temporary suspension of the alcohol license, *his license review under subsection (e) was completed*. As the homicide investigation continued, the "review"

---

[31] [Doc. 31-5]; Davis Dep. at 18:11-23, 39:6-25, 40:1-12.
[32] [Doc. 31-5]; Davis Dep. at 18:11-23, 39:6-25, 40:1-41:14.
[33] [Doc. 39 at 6, 17].
[34] [Doc. 31-8 at 26, 28, 37-38]; [Doc. 31-5]; Davis Dep. at 41:8-10, 43:18-44:14.
[35] *Id*.
[36] Section 4-402(c)(6)(d); [Doc. 29-3].

referenced by Sheriff Davis in the suspension notice contemplated that additional evidence gleaned from further investigation may negate or confirm facts relied upon in the license review, which could affect the status of the temporary suspension.[37] Thereafter, Sheriff Davis decided to draft a written report containing his conclusions and proposed recommendations per subsection (d) once his follow-up investigation into Thirsty Turtle's involvement was completed.[38]

Accordingly, and based on the totality of the circumstances, Sheriff Davis was fully within his discretionary authority to take all of these factors into consideration and ultimately determine that a temporary suspension of the alcohol license was in furtherance of public safety and to prevent further "severe risk of injury or death to any person or to any member of the public at large."[39] Contrary to Plaintiffs' interpretation, Sheriff Davis was not required to complete the entire homicide investigation under Section 4-402(c), complete a written report under subsection (d), and then avail himself of the exigent circumstances authority provided under subsection (e). Such an interpretation negates the ability for immediate action to be taken and circumvents the intent and purpose of an exigent circumstances provision.

Even assuming *arguendo* that Sheriff Davis's application of Sections 4-402(c), (d), and (e) was in error, his conduct in utilizing this interpretation was reasonable, especially when considering that he sought the advice of counsel before acting.[40]

---

[37] [Doc. 29-4].
[38] [Doc. 29-6].
[39] *Id.* at Section 4-402(e); [Doc. 29-3].
[40] *Green v. Brantley*, 719 F. Supp. 1570, 1583 (N.D. Ga. 1989); *Frye v. Kansas City Missouri Police Dept.*, 375 F.3d 785, 792 (8th Cir. 2004); *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004); *Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389, 399 (8th Cir. 1995); *Tubbesing v. Arnold*, 742 F.2d 401, 407 (8th Cir. 1984) (good faith reliance on advice of counsel is a factor to be weighed in finding qualified immunity)). Indeed, it is clear that counsel for both parties have different interpretations of Section 4-402. If attorneys are unable to agree on its application, Sheriff Davis, who is not an attorney, cannot be found to have "intentionally disregarded the regulatory scheme for taking summary action." [Doc. 29 at 15].

## II. Sheriff Davis's purported ignorance of the regulatory framework of Section 4-402 does not negate Plaintiffs' obligation to seek post-deprivation relief.

Plaintiffs assert that they "were not required to pursue post-deprivation remedies when [Sheriff Davis] ignored the regulatory framework set forth in Section 4-402(c), (d) and (e)."[41] However, Plaintiffs *cite no case law or statutory authority for that proposition*. Indeed, Georgia law dictates otherwise.[42] If Sheriff Davis were to be found to have in fact "ignored" the statutory framework of Section 4-402, the same would not negate Plaintiffs' obligation to rectify that violation. The purpose of post-deprivation relief is to allow Plaintiffs an avenue to "right" alleged "wrong" before additional harm or damages are incurred. There is no dispute in the evidence that Plaintiffs failed to seek post-deprivation relief through filing for injunctive relief, by initiating mandamus proceedings, or requesting a hearing before the Macon-Bibb County Commission.[43] Plaintiffs instead sat idly by while also claiming recurrent damages caused by Thirsty Turtle's loss of its alcohol license. Georgia law explicitly rejects procedural due process claims in such instances.[44]

## III. Plaintiffs' concessions require the grant of summary judgment in those respects.

In their response, Plaintiffs provided that they were abandoning their substantive due process claims and that the evidence did not support Plaintiff Obelgoner maintaining a cause of action independent from Plaintiff Philex.[45] Accordingly, Sheriff Davis requests that summary judgment be granted as to Plaintiffs' substantive due process claims. Sheriff Davis further requests

---

[41] [Doc. 39 at 19].

[42] *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (*per curiam*) ("If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process.").

[43] [Doc. 29-5]; [Doc. 31-10]; [Doc. 29-7]; T. Obelgoner Dep. at 47:5-12, 71:11-17; [Doc. 31-3].

[44] *6420 Roswell Rd., Inc. v. City of Sandy Springs*, 484 F. Supp. 3d 1321, 1334 (N.D. Ga. 2020); *Artistic Ent., Inc. v. City of Warner Robins*, 134 Fed. Appx. 306, 309 (11th Cir. 2005) ("Even where a party suffers a procedural deprivation, there is no procedural due process violation unless the state refuses to make available a means to remedy the deprivation.").

[45] [Doc. 39 at 13, fn. 1; 20, fn. 2].

that all claims raised by Plaintiff Obelgoner in his individual capacity be dismissed and that he be removed as a party plaintiff in this action.

### IV.     Conclusion

For the foregoing reasons and pursuant to the authority cited therein, Sheriff Davis submits that there remains no genuine issue as to any material fact, and accordingly, Sheriff Davis is entitled to a judgment as a matter of law. Sherriff Davis respectfully requests that this Court GRANT this Motion for Summary Judgment.

Respectfully submitted, this 5th day of May, 2025.

>                                    */s/ Duke R. Groover*
>                                    DUKE R. GROOVER
>                                    Georgia Bar No. 313225
>                                    CHRIS E. MIRANDA
>                                    Georgia Bar No. 940867
>                                    *Attorneys for Sheriff David Davis*

JAMES-BATES-BRANNAN-GROOVER-LLP
P.O. Box 4283
Macon, GA  31208
(478) 742-4280 (telephone)
(478) 742-8720 (facsimile)
dgroover@jamesbatesllp.com
cmiranda@jamesbatesllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served true and correct copies of the foregoing, *Sheriff David Davis's Reply to Plaintiffs' Response to Motion for Summary Judgment* upon all parties through the Court's CM/ECF electronic filing system, which will send e-mail notification of such filing to the attorneys of record and/or by emailing true and correct copies thereof to all parties as follows:

Charles E. Cox, Jr.
P.O. Box 67
Macon, GA 31202-0067
*Attorney for Plaintiffs*
charles@cecoxjr.com

Respectfully submitted, this 5th day of May, 2025.

                                           */s/ Duke R. Groover*
                                           DUKE R. GROOVER
                                           Georgia Bar No. 313225
                                           CHRIS E. MIRANDA
                                           Georgia Bar No. 940867
                                           *Attorneys for Sheriff David Davis*

JAMES-BATES-BRANNAN-GROOVER-LLP
P.O. Box 4283
Macon, GA  31208
(478) 742-4280 (telephone)
(478) 742-8720 (facsimile)
dgroover@jamesbatesllp.com
cmiranda@jamesbatesllp.com