# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **PHILEX, INC. and TIM OBELGONER,**  *Plaintiffs,*  v.  **Sheriff DAVID DAVIS,** *in his individual capacity*,  *Defendant.* | **CIVIL ACTION NO. 5:22-cv-00420-TES** |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Sheriff David Davis's Motion for Summary Judgment [Doc. 29].[1]

## FACTUAL BACKGROUND[2]

Tim Obelgoner is the sole owner of Philex, Inc.—a Georgia corporation that owned and operated The Thirsty Turtle in downtown Macon, Georgia. [Doc. 39-1, ¶¶ 1– 2]. Obelgoner obtained an alcohol license to sell malt beverages, wine, and distilled

---

[1] To begin, the Court clarifies the issues remaining in this matter. First, Plaintiffs concede that they are "abandoning their substantive due process claims." [Doc. 39, p. 13]. Second, Plaintiffs agree with Sheriff Davis's argument that Obelgoner cannot maintain an action separately from Philex. [*Id.* at p. 20 n.2]. Therefore, the Court **GRANTS** Sheriff Davis's summary-judgment motion as to the substantive due process claims and as to any claims brought by Obelgoner. Accordingly, the only remaining plaintiff is Philex, and the only remaining claim is its procedural due process claim brought via 42 U.S.C. § 1983.

[2] Much of the factual background is drawn from Philex's Response to Davis's Statement of Undisputed Material Facts [Doc. 39-1] because that filing contains Sheriff Davis's propositions and Philex's responses.

spirits at The Thirsty Turtle for the 2020 calendar year. [*Id.* at ¶ 3]. At 2:40 a.m., on November 27, 2020, after The Thirsty Turtle closed, a fight broke out in the area outside the bar resulting in the shooting death of one individual and injuries to several others. [*Id.* at ¶¶ 6, 8]. The Bibb County Sheriff's Office responded to the incident. [*Id.* at ¶¶ 13–14]. Following a brief investigation, Sheriff Davis sought advice from the county attorney's office concerning the meaning of Bibb County Ordinance § 4-402(e). Within 24 hours of the incident, Sheriff Davis asked the Assistant County Attorney for Macon-Bibb County, Michael McNeill, to "give him as call [as soon as possible] to discuss the mechanics of instituting a temporary suspension" of The Thirsty Turtle's alcohol license. [*Id.* at ¶ 31].

Now, to fully understand the situation, the Court must review a few portions of the Bibb County Code of Ordinances.[3]

Section 4-402(c) instructs that:

> The Sheriff shall be responsible for supervising the activities of all persons licensed under this Chapter so as to ensure compliance with the provisions of this Chapter and with all State laws relating to the manufacture, distribution, sale, service, or consumption of alcoholic beverages. The Sheriff shall be authorized to undertake a review of any license issued under this Chapter for the purpose of considering whether to take any Adverse Action against such business if, at any time during the effective period of any license issued under this Chapter, the Sheriff becomes aware [of various illegal or gang activity].

---

[3] There is significant debate—none of which needs to be resolved for purposes of Sheriff Davis's summary-judgment motion—regarding the correct interpretation of Ordinance §§ 4-402(c)–(e).

Additionally, § 4-402(d) provides that:

> Upon completing any review under subsection (c) of this Section, the Sheriff should prepare a written report[4] identifying the licensee and all current licenses issued under this Chapter to said licensee for any businesses or locations within Macon-Bibb County; the particular business(es) or location(s) for which the review was performed; the reasons for which a review was initiated; any findings or conclusions made as a result of that review; and stating whether the Sheriff recommends no changes for the licensee, or specifying any Adverse Actions the Sheriff recommends taking against such licensee.

Finally, § 4-402(e) affords the Sheriff the power to temporarily revoke a license, if, "upon completing any license review under subsection (c) of this Section, the Sheriff makes a determination that the factors considered under subsection (c) create a particular and severe risk of injury or death to any person or to any member of the public at large[.]"

After reviewing these provisions, McNeill provided Sheriff Davis with advice regarding the Ordinance and a proposed suspension notice. [*Id.* at ¶¶ 23–32]. Eventually, McNeill sent Sheriff Davis proposed language, which Sheriff Davis adopted and served. [*Id.* at ¶¶ 33–35]. Relying on McNeill's advice and interpretation of the Ordinance, Sheriff Davis suspended The Thirsty Turtle's alcohol license. [*Id.* at ¶ 42]. The Macon-Bibb County Commission did not hold a hearing within 90 days as

---

[4] Philex argues that Sheriff Davis needed to complete a full investigation and report before issuing the temporary suspension. [Doc. 39, p. 16]. Sheriff Davis disagrees with that reading and argues that the Ordinance's grant of supervisory power to the Sheriff allows him to revoke the permits immediately and prior to a full-blown investigation—if he finds a "particular and severe risk of injury or death to any person or to any member of the public at large" found in section (e) of the Ordinance. [Doc. 41, p. 2].

3

provided for in § 4-402(e), so the Sheriff's temporary suspension elapsed as a matter of law on February 26, 2021.

Soon after Sheriff Davis's suspension of The Thirsty Turtle's alcohol license, Philex's counsel emailed McNeill to dispute the interpretation and application of the Ordinance. [*Id.* at ¶ 38]. Following that email, McNeill compiled a proposed report, which Sheriff Davis adopted and provided to then-Mayor Robert Reichert. [*Id.* at ¶¶ 40–41].

During the temporary suspension, The Thirsty Turtle remained closed, and Philex (through Obelgoner or any representative) neither attempted to speak with Sheriff Davis regarding the suspension, nor did it request a hearing before the Macon-Bibb County Commission. [*Id.* at ¶¶ 43–45]. Philex also didn't file a lawsuit or petition for certiorari to the superior court as Georgia law permits. [*Id.* at ¶ 46].

## **LEGAL STANDARD**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[5] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does

---

[5] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted). Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary

judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

## DISCUSSION

"It is axiomatic that, in general, the Constitution requires that the [S]tate provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) *abrogation on other grounds recognized in Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1239 (11th Cir. 2025). To establish a procedural due process claim, a plaintiff must show: (1) a deprivation of a constitutionally protected liberty or property interest;[6] (2) state action; and (3) constitutionally inadequate process. *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (quotations and citations omitted). But, even when a party suffers a procedural deprivation, there is no procedural due process violation unless the State "refuses to make available a means to remedy the deprivation." *McKinney*, 20 F.3d at 1563. Put another way, as the Supreme Court has explained, "[a]ll that due process requires . . . is a post-deprivation 'means of redress for property deprivations satisfy[ing] the requirements of procedural due process.'" *Id.* at 1563 (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). Indeed, "only when the [S]tate refuses to provide a process sufficient to remedy the procedural deprivation does a

---

[6] Alcohol licenses are generally considered a constitutionally protected property interest, and during the Court's hearing on August 27, 2025, Sheriff Davis conceded that there is a property interest at stake in this case. *DeKalb Event Ctr., Inc. v. City of Chamblee, Ga.*, 15 F.4th 1056, 1060 (11th Cir. 2021).

7

constitutional violation actionable under [§] 1983 arise." *Id.* at 1557 (emphasis added); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991); *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the [S]tate fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.").

Here, Philex admits that it did not attempt to invoke any of the available state or local remedies at its disposal. [Doc. 39-1, ¶¶ 44–46]; *see also McKinney*, 20 F.3d at 1563 ("[The plaintiff] failed to take advantage of any state remedies, opting instead to pursue [its] claim in federal court."). It never asked the Macon-Bibb County Commission to hold a final hearing as to Sheriff Davis's temporary suspension. It didn't file suit in the Superior Court of Bibb County seeking a temporary restraining order or preliminary injunction enjoining the Sheriff from carrying out his temporary suspension. Neither did it file suit asking a superior court judge to issue a writ of mandamus to require the Mayor and Commission to hold the final hearing as set forth in § 4-402(e). The Court can reach no other conclusion than Philex simply, for whatever reason, accepted the temporary decision without any sort of formal protest short of a letter from its counsel to the county attorney.

As in *McKinney*, Philex "did not allege in [its] [C]omplaint that the [S]tate

procedures were inadequate." 20 F.3d at 1563 n.18. Philex can't pass up each opportunity for state-law relief and then expect a federal claim to save its case.[7] *See Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the [S]tate deprived him of procedural due process.").

In that same vein, for a state-law remedy to be adequate, it need not provide "all the relief available under [§] 1983." *Id.* (citing *McKinney*, 20 F.3d at 1564). Instead, "the state procedure must be able to correct whatever deficiencies exist and to provide [a] plaintiff with whatever process is due." *Id.* Importantly, Georgia law permits liquor-license holders to petition the superior court for certiorari review. *Artistic Ent., Inc. v. City of Warner Robins*, 134 F. App'x 306, 309 (11th Cir. 2005) (affirming summary judgment on a liquor-license procedural due process claim because the plaintiff had

---

[7] The Court also considers the deprivation and due process allotments through the lens of *Mathews v. Eldridge*. 424 U.S. 319, 335 (1976). There, the Supreme Court held

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Here, while the Court finds the private interest of Philex in maintaining an alcohol license is strong, so is a government's interest in suspending—temporarily—the use of an alcohol license to "discourage[] unlawful activity and in maintain[] a safe and orderly environment." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 (11th Cir. 2011). Although Philex was not afforded a pre-deprivation hearing, it did have numerous opportunities to challenge the temporary revocation, and the Ordinance limited the temporary revocation to 90 days. While that is not dispositive, it does tend to favor the reasonableness of Sheriff Davis's actions.

adequate state remedies via Georgia's superior courts); *see also* O.C.G.A. § 5-4-1. Additionally, the Georgia Supreme Court has recognized a superior court's ability to review alcohol license decisions under writs of mandamus. *Consol. Gov't of Columbus v. Barwick*, 549 S.E.2d 73, 74 (Ga. 2001); *see also Foxy Lady*, 347 F.3d at 1239.[8] Both of these paths offered sufficient state-law remedies, which precludes a federal due process claim. *Pedrick v. City of Rome, Ga. by & through Alcohol Control Comm'n*, No. 4:07-CV-0184-HLM, 2007 WL 9702707, at *7 (N.D. Ga. Sept. 19, 2007) ("Because the State has provided [p]laintiff with a means to remedy the alleged deprivation, [p]laintiff has no viable procedural due process claim based on lack of notice or lack of a hearing.").

On this point, Philex points to *Fetner v. City of Roanoke* to support its position. 813 F.2d 1183, 1184 (11th Cir. 1987). Repeating the same fatal mistake as *Fetner*'s plaintiff, Philex "focus[es] on the wrong state process." *Prapti, Inc. v. City of Hampton, Ga.*, No.

---

[8] To the extent Philex contends that Sheriff Davis acted contrary to his authority to the Ordinance, it could have litigated that claim in a writ of mandamus action. *Cf. A.A.A. Always Open Bail Bonds, Inc. v. DeKalb Cnty., Ga.*, 129 F. App'x 522, 525 (11th Cir. 2005) ("In applying Georgia law, we have previously held that the writ of mandamus can be an adequate state remedy to ensure a party was not deprived of its due process rights."); *Cotton*, 216 F.3d at 1332 ("Under Georgia law, when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed, a party may seek mandamus."); *Pryor Org., Inc. v. Stewart*, 554 S.E.2d 132, 134 (Ga. 2001) (allowing for mandamus relief when an official "grossly abused his or her discretion").

Additionally, even assuming Sheriff Davis did violate the Ordinance, that does not automatically create a due process violation. Indeed, the "fact that a state statute, rule, or regulation was violated does not state a federal constitutional procedural due process violation." *Williams v. Hillman*, No. 08-0081-KD-C, 2008 WL 11425746, at *8 (S.D. Ala. June 17, 2008); *see also Smith v. Georgia*, 684 F.2d 729, 733 (11th Cir. 1982) ("[N]ot every violation by a state agency of its own rules rises to the level of a due process infringement."). This is important because Philex primarily argues that Sheriff Davis's actions violated the Ordinance, but that does not mean that Sheriff Davis violated the *federal* guarantee of due process. *First Assembly of God of Naples, Fla., Inc. v. Collier Cnty., Fla.*, 20 F.3d 419, 422 (11th Cir.), *opinion modified on other grounds on denial of reh'g*, 27 F.3d 526 (11th Cir. 1994).

10

1:08-CV-0250-JOF, 2008 WL 11411398, at *3 (N.D. Ga. June 11, 2008). Specifically, Philex takes aim at Macon-Bibb County's temporary suspension process and its "lack of a pre-deprivation notice and hearing despite the fact that such process would have been practical." *Id*. However, as Judge Forrester so adequately explained, controlling Eleventh Circuit precedent, like "*McKinney, Horton*, and *Foxy Lady* make clear . . . that the availability of state process includes the ability to go to state court to protest another body's procedures for or conduct during a hearing." *Id.* Put another way, the available state remedies are not just those outlined in § 4-402(e) of the Ordinance—they also include Philex's chance to "take [its] complaints to [s]uperior [c]ourt via a writ of certiorari" and potentially "receive a discretionary appeal in the Georgia Supreme Court." *Id.* Additionally—and this is Philex's whole point—*Fetner* stands for the proposition that a plaintiff need not exhaust state administrative remedies prior to bringing a § 1983 claim. 813 F.2d at 1185. That's true, but the Court's distinction here "is not [that Philex *must* drudge through some] exhaustion requirement" before it filed this § 1983 action in federal court. *Cotton*, 216 F.3d at 1331 n.2. It doesn't. Instead, the Court's distinction is simply a "recognition that procedural due process violations do not even exist unless no adequate state remedies are available." *Id.*

      The Eleventh Circuit could not have been clearer:

> [T]he *McKinney* rule does not turn on whether a plaintiff has presented the claim to the state courts, because the rule is not based on ripeness or exhaustion principles. Instead, *McKinney* is based on a recognition that the process a state provides is not only that employed by the board, agency, or

11

>other governmental entity whose action is in question, but also includes the remedial process state courts could provide if asked. . . . The *McKinney* rule is not micro in focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks *to the existence of an opportunity*—whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so. If state courts generally would not provide an adequate remedy for that type of procedural deprivation, then the federal court determines whether the Fourteenth Amendment Due Process Clause requires such a remedy, and if it does, the federal court remedies the violation.

*Horton v. Bd. of Cnty. Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000) (emphasis added).

Further, Philex relies on *Fetner*'s holding that "[p]ost-deprivation remedies do not provide due process if pre-deprivation remedies are practicable." 813 F.2d at 1186. Put simply, Philex takes that position that because it couldn't "practically" fight for its alcohol license before Sheriff Davis stripped it way—temporarily, there is a *carte blanche*, or automatic, due process violation. *See id.* Not so. Under the Ordinance, the suspension was temporary, and Sheriff Davis acted on what he considered to be an emergency basis. *See* [Doc. 39-1, ¶ 24]. If Philex considered the suspension improper because Sheriff Davis failed to properly follow the Ordinance or abused his discretion in determining an emergency existed under the circumstances, it could have sought review by the Macon-Bibb County Commission, *see* [Doc. 39-2, p. 5 § 4-403(d) & 4-405], the Superior Court of Bibb County, *see* [*id.* at p. 10 § 4-410], or any other state-law remedy. Philex chose not to. That is wholly distinct from *Fetner* where the employee's termination was

12

permanent, and the board planned the termination before carrying it out—making a pre-deprivation hearing practicable. *Id.*

Philex's arguments that Sheriff Davis acted beyond his authority are likewise unavailing. As the Supreme Court explained in *Hudson v. Palmer*,

> The underlying rationale of *Parratt* is that when deprivations of property are effected through **random and unauthorized conduct of a state employee, [pre-deprivation] procedures are simply 'impracticable' since the [S]tate cannot know when such deprivations will occur.** We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording [pre-deprivation] process is concerned. The [S]tate can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.

468 U.S. 517, 533 (1984) (emphasis added). Therefore, Philex's arguments regarding Sheriff Davis exceeding his authority do not reduce the efficacy of post-deprivation relief. Indeed, it makes the writ of mandamus or petition of certiorari much easier to write. *Cf. id.* ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful [post-deprivation] remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the [S]tate's action is not complete until and unless it provides or refuses to provide a suitable [post-deprivation] remedy.").

As the Eleventh Circuit has concluded numerous times in deprivation cases like this one, "because an adequate post-deprivation process is in place under state law, no

federal procedural due process claim exists." *Foxy Lady*, 347 F.3d at 1239.[9]

## CONCLUSION

Based upon the foregoing, the Court **GRANTS** Sheriff Davis's Motion for Summary Judgment [Doc. 29]. The Clerk of Court is **DIRECTED** to **ENTER** Judgment and **CLOSE** this case.

**SO ORDERED**, this 28th day of August, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

---

[9] Sheriff Davis also claims that qualified immunity shields him from liability. [Doc. 29-1, pp. 21–27]. However, the Court recalls the United States Supreme Court's admonition that "that lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *District of Columbia v. Wesby*, 583 U.S. 48, 62 n.7 (2018) (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). And, since it's always a good practice for district judges to follow and respect Supreme Court rulings, the Court need not reach the merits of Sheriff Davis's claim of qualified immunity. *Nat'l Insts. of Health v. Am. Pub. Health Assoc.*, 606 U.S. ----, 2025 WL 2415669, at *4 (Aug. 21, 2025), Gorsuch, J., concurring (". . . [W]hen [the Supreme Court] issues a decision, it constitutes a precedent that commands respect in lower courts.")